UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMIR CLAYTON POWELL,

    *Plaintiff*,

v.

NATIONAL INSTITUTE OF BUILDING SCIENCES,

    *Defendant*.

No. 23-cv-3336 (DLF)

**MEMORANDUM OPINION**

    Amir Clayton Powell brings this employment discrimination action against the National Institute of Building Sciences ("NIBS"). He seeks relief under the D.C. Human Rights Act, D.C. Code § 2-1401 *et seq.*, and the D.C. Wage Payment Collection Law, D.C. Code § 32-1302 *et seq.*, and he asserts claims for defamation, breach of contract, wrongful termination, and invasion of privacy. NIBS moves to dismiss and for summary judgment. Mot., Dkt. 20. For the reasons below, the Court will grant the defendant's motion in part and deny it in part.

**I.    BACKGROUND**[1]

    NIBS is a non-profit organization that seeks to solve problems related to the construction of safe, affordable structures for housing, commerce, and industry in the United States. Am. Compl. ¶ 6, Dkt. 17. NIBS holds government contracts covered by the organization's facility security clearance, which account for up to thirty percent of its annual gross revenue. *Id.* ¶ 8, 23.

---

[1] In evaluating the defendant's motion to dismiss for failure to state a claim, the Court assumes that the material factual allegations in Powell's operative complaint are true. *See Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). For the reasons stated, *infra* III.B, the Court will deny the NIB's motion for summary judgment without prejudice.

Powell is an African American male, trained lawyer, and experienced executive professional. *Id.* ¶¶ 5, 7.  In September 2022, Powell began employment as the President and CEO of NIBS. *Id.* ¶ 7.  He was preceded in his position by Henry Green, an African American male, Lakeisha Woods, an African American female, and Steven Ayers, a white male. *Id.* ¶¶ 7.

Powell was informed that he was required to obtain a Secret Level government security clearance as a condition of employment. *Id.* ¶ 8.  Powell began his employment without any clearance and obtained an interim Secret clearance in January 2023. *Id.* ¶ 10.  Powell never received a final clearance.  He alleges that he was not given any date by which he was required to obtain a final clearance, and that his predecessor Ayers, a white male, never held a Secret Level clearance. *Id.* ¶¶ 7–8.

As President and CEO, Powell reported to the NIBS Board of Directors and served as a Board member. *Id.* ¶ 7.  During Powell's tenure, Anne Ellis, a white female, served as Chair of the NIBS Board and Thomas Phoenix served as Vice Chair. *Id.*  The complaint alleges that Ellis "micromanage[d]" Powell and his day-to-day operations; reached out to Powell's "direct reports to provide her with information about Mr. Powell that she continually tried to use against him"; complained about Powell's hiring decisions; commissioned and presented to the Board a study to "undermine Mr. Powell on where N[IB]S resources should be deployed"; frequently went "directly to [Powell's] staff" regarding scheduling disputes; and "demanded that Mr. Powell justify all travel for himself." *Id.* ¶ 9.  During a May 2023 Board meeting, Powell asserts that he "was asked to leave the boardroom to allow for private deliberations" between other Board members and that he "was the only member of the Executive Team excused from the meeting." *Id.* ¶ 12.  During another executive session, Powell alleges that Ellis "stressed the need to remind Mr. Powell that he works for the [Board]" and "encouraged other Board Members to remember that Mr. Powell

2

works for them." *Id.*

Ellis, Phoenix, and another Board member managed Powell's CEO 360 Review. *Id.* ¶ 11. Powell selected Ashley Kelloff as the Human Resources consultant responsible for interviewing NIBS staff and stakeholders for his review. *Id.* In June 2023, Kelloff presented her results at a dinner attended by Powell, Ellis, and Phoenix. *Id.* ¶ 14. Kelloff explained that interviewees considered Powell a "'visionary' and a 'good leader,'" but noted some areas for improvement: interviewees stated that Powell "needed to be 'clear on the reporting relationship to the Board'"; and that Powell's "'my people' comments" and "opinions on things outside of the NIBS strategy appear too biased and controversial and go against the inclusivity NIBS has been cultivating." *Id.* During the review dinner, Phoenix raised concerns about Powell's use of the term "hotep" as a greeting in emails. *Id.* ¶ 15. Phoenix stated that "he had been told and confirmed through his own research that a terrorist group was now using 'hotep' as a greeting" and that Powell "should discontinue using the term in his greetings because it reflected poorly on NIBS." *Id.* Phoenix told Powell: "You can do what you want. No one is telling you how to communicate, but it would probably be better to stop using that word just to avoid any confusion." *Id.* According to Powell, "'Hotep!' is a friendly greeting in certain circles of Afro-centric and Black culture." *Id.* Powell alleges that "Phoenix's comments were very hurtful," "attacked [Powell's] ethnic identity," and "raised the prospects of [Powell's] appearance of fealty to a non-existent Black terrorist group." *Id.* ¶¶ 15, 23. Powell also alleges that Ellis "fabricated" an interaction with Powell's executive assistant to "disparage" Powell. *Id.* ¶ 15. Ellis purportedly "falsely claimed" that Powell's executive assistant told Ellis "to get in line like everybody else to speak to [Powell]." *Id.* Powell asserts that, in reality, his assistant merely told Ellis that Powell was out of town and "[the assistant] would attempt to reach him, but she was not certain that she would be able to." *Id.*

3

Powell claims that the NIBS senior management was responsible for his failure to obtain a final Secret Level clearance.  When Powell's interim clearance was issued in January 2023, Bob Payn, the NIBS Facility Security Officer, purportedly failed to follow certain regulatory procedures: he did not ask Powell to execute a Standard Form, SF-312, or to brief Powell on the requirements for interim access to classified materials, as required by the National Industrial Security Program, *see* 32 CFR § 117.10.  *Id.* ¶ 10.  According to Powell, Payn "is untrained and unfamiliar with the proper procedures for processing security clearances."  *Id.* ¶ 24.  In March 2023, when the Defense Counterintelligence and Security Agency reached out to Payn to inquire whether Powell still needed a Secret Level clearance, Payn purportedly failed to respond.  *Id.* ¶ 10.

On July 20, 2023, the Agency withdrew Powell's interim clearance, allegedly because of Payn's nonresponse.  *Id.* ¶ 18.  The Agency also sent a confidential "Eyes Only Package" to Payn and Powell, which included a "Statement of Reasons" for its inability to make a final determination on Powell's Secret Level clearance.  *Id.*  The Agency referred Powell's application to its Consolidated Adjudication Services for further consideration and a final determination, and that investigation remained pending after the withdrawal of Powell's interim clearance.  *Id.*  Powell shared the contents of the "Eyes Only Package" with NIBS legal counsel Hugh Webster but declined to provide its details to the NIBS Board.  *Id.* ¶¶ 20–22.  After the withdrawal of Powell's clearance, Ellis "commented" that Powell "could have been walled off from information that required a security clearance."  *Id.* ¶ 18.

On Friday, July 28, 2023, Powell, Ellis, Phoenix, and other NIBS Board members and senior executives met to discuss the withdrawal of Powell's interim clearance.  *Id.* ¶ 22.  Ellis read a prepared announcement that the NIBS Board had voted to place Powell on paid administrative leave for thirty days, out of "an abundance of caution" due to his withdrawn clearance.  *Id.* ¶ 23.

Ellis also stated that Powell "knew he needed a Secret Level Security Clearance when he was hired, he did not get it, and he took a job which he knew he was unqualified for and should be suspended and terminated." *Id.* ¶ 22.  Additionally, Phoenix explained that the Board "did not have any choice" except to place Powell on leave: the Board was concerned about the suspension of NIBS's facility clearance level, which covered contracts for "less than thirty percent of the organization's gross annual revenue." *Id.*

The following Monday, on July 31, 2023, Ellis and Phoenix convened a meeting with the entire NIBS staff and disclosed that Powell was being placed on administrative leave. *Id.* ¶ 25. Ellis repeated her statement that Powell "knew he needed a Secret Level Security Clearance when he was hired, he did not get it, and he took a job which he knew he was unqualified for." *Id.*  A staff member asked whether Ellis was concerned about Powell's privacy, because Ellis's announcement "would cause staff to spread rumor [*sic*] over the weekend about Ms. Powell [*sic*]." *Id.*  Ellis allegedly responded that "rumors are the best what [*sic*] to get information out." *Id.*

Roughly two weeks later, on August 14, 2023, Powell was terminated by a unanimous vote of the NIBS Board. *Id.* ¶ 27.  Upon his termination, the Defense Counterintelligence and Security Agency closed its investigation into his security clearance. *Id.*  Powell asserts that his paycheck for regular wages was due on August 15, 2023, and that NIBS failed to pay that check on time. *Id*. He further claims that his employment contract was for a two-year term and he was guaranteed three months' severance pay if he was terminated in less than two years. *Id.*

Powell sued NIBS.  His complaint raises six claims: (1) disparate treatment and hostile work environment under the D.C. Human Rights Act, D.C. Code § 2-1401 *et seq.*; (2) wage theft under the D.C. Wage Payment and Wage Collection Law, D.C. Code § 1301 *et seq.*; (3) defamation; (4) breach of contract; (5) wrongful termination; and (6) invasion of privacy / false

5

light. Am. Compl. ¶¶ 28–70. He seeks damages, a declaratory judgment, and other relief. *Id.* ¶¶ A–H.

NIBS moves to dismiss Powell's action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment.

## II.   LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim "allows [a] court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id*. at 679, and the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). But the Court need not accept "a legal conclusion couched as a factual allegation" nor an inference unsupported by the facts alleged in the pleadings. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Under Rule 56 of the Federal Rules of Civil Procedure, a litigant may move for summary judgment, "identifying each claim or defense . . . on which summary judgment is sought." Fed.

6

R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*  "[S]ummary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

Under Rule 56(d) of the Federal Rules of Civil Procedure, a litigant may seek deferral or denial of a motion for summary judgment if she "shows . . . that, for specified reasons, [he] cannot present facts essential to justify [his] opposition."  Fed. R. Civ. P. 56(d).  "To obtain relief," the litigant must submit an affidavit or declaration outlining the facts he intends to discover, along with reasons why those facts (1) "are necessary to the litigation," (2) could not be produced in opposition to the other party's summary judgment motion, and (3) are "in fact discoverable." *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020) (quoting *Convertino v. DOJ*, 684 F.3d 93, 99– 100 (D.C. Cir. 2012)).  "Summary judgment usually 'is premature unless all parties have had a full opportunity to conduct discovery,'" although the Court must decide each Rule 56(d) motion based on "the specific facts and circumstances" rather than "presumptions about a given stage of litigation."  *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 530 (D.C. Cir. 2019) (quoting *Convertino*, 684 F.3d at 99) (internal quotation marks omitted).

### III.   ANALYSIS

The Court will dismiss Powell's claims for hostile work environment under the D.C. Human Rights Act (Count I in part), defamation (Count III), breach of contract (Count IV), wrongful termination (Count V), and invasion of privacy (Count VI). It will not dismiss his

7

disparate treatment claim under the D.C. Human Rights Act (Count I in part), and it will allow his wage theft claim under the D.C. Code to proceed only in part. It will also deny as premature NIB's Motion for Summary Judgment.

### A. Motion to Dismiss

#### 1. Count I: Violations of the D.C. Human Rights Act

The D.C. Human Rights Act provides that an employer may not "discharge" or "otherwise [] discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment" on the basis of race. D.C. Code § 2-1402.11(a)(1)(A). "We analyze discrimination claims under the D.C. Human Rights Act in the same way that we analyze discrimination claims under the federal anti-discrimination laws." *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011). Count 1 alleges D.C. Human Rights Act violations under two separate theories: (1) disparate treatment and (2) hostile work environment. For the reasons that follow, the Court will deny the motion to dismiss on the disparate treatment theory and grant the motion to dismiss on the hostile work environment theory.

##### a. Disparate Treatment

To prove disparate treatment, a plaintiff must allege that he suffered an adverse employment action as a result of discrimination. *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006). In the absence of direct evidence of discrimination—for example, "a statement that itself shows racial or gender bias in the decision," *Vatel*, 627 F.3d at 1247—a disparate treatment claim is analyzed under the *McDonnell Douglas* framework, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Townsend v. United States*, 236 F. Supp. 3d 280 (D.D.C. 2017). A plaintiff must plead facts from which the Court can plausibly infer "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and

8

(4) circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (citations omitted). At the motion-to-dismiss stage, a plaintiff need not plead facts supporting every element of a *prima facie* case or anticipate the non-discriminatory reasons that may be proffered by his employer for its actions. *See id.* at 511; *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–162 (D.C. Cir. 2015) ("[A plaintiff] need not plead facts showing each of the[] elements [of a discrimination claim] in order to defeat a motion under Rule 12(b)(6)."). Rather, "the guiding lodestar" is whether, taken collectively, "the inferences of discrimination drawn by the plaintiff are reasonable and plausibly supported." *Townsend*, 236 F. Supp. 3d at 298 (citing *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016)).

Powell states a claim for disparate treatment under the D.C. Human Rights Act. NIBS does not dispute that Powell was a member of a "protected group" who suffered an "adverse employment action." *Swierkiewicz*, 534 U.S. at 510; *see* Mot. at 5–6. As to Powell's "qualification," the Court finds that Powell just barely alleges sufficient facts to support an inference he was qualified for the CEO position without a Secret Level clearance. Although Powell concedes he was told the clearance was a condition of employment, he alleges that his white male predecessor Ayers "who did not have a Secret Level Security Clearance [] was not terminated."[2] Am. Compl. ¶ 32. Further, Ellis allegedly stated that Powell "could have been walled of from work that required a security clearance." *Id.* These facts at least raise the inference that Powell could have performed his job responsibilities without a clearance. In sum, Powell has identified an allegedly similarly-situated individual, not in his protected class, who lacked the same

---

[2] NIBS proffers an affidavit from Ayers attesting that he held a Top Secret clearance at all times during his employment at NIBS. *See* Mot. Ex. A at 2, Dkt. 20-2. But in deciding a motion to dismiss, the Court "generally may not consider materials outside the pleadings" and must accept as true the allegations in the complaint. *Elec. Priv. Info. Ctr. v. IRS*, 575 F. Supp. 3d 84, 88 (D.D.C. 2021).

9

qualification but was not terminated. *See Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (reversing dismissal of a disparate treatment claim where plaintiff "identified a similarly-situated employee who is not in her protected class and explained why she has equivalent qualifications"). Because Powell has raised an inference of discrimination, his disparate treatment claim survives the motion to dismiss.

### b. Hostile Work Environment

To prevail on a hostile work environment claim, a plaintiff must show that his employer "subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The hostility standard is "demanding to ensure that [work environment claims] do[] not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Sporadic incidents of rude or unprofessional behavior are insufficient to establish an environment of "severe or pervasive" hostility. *Barbour v. Browner*, 181 F.3d 1342, 1348–49 (D.C. Cir. 1999). "Courts in this jurisdiction have routinely held that hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class." *Na'Im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009)

Powell fails to state a claim for hostile work environment. He relies on Ellis's "extreme scrutiny and micromanagement," his exclusion from the May 2023 Board meeting and other executive sessions, and Phoenix's comments about his use of the term "hotep." Am. Compl. ¶ 32. As to Ellis's conduct and the exclusion from Board meetings, Powell fails to allege any facts that suggest that such treatment was because of his race. Although Powell conclusorily asserts that he

10

was "treated differently than his white male predecessor," he also fails to allege any facts that suggest Ellis's treatment of Ayers differed from her treatment of Powell. *See Abebio v. G4S Gov't Solutions*, 72 F. Supp.3d 254, 259 (D.D.C. 2014) (granting motion to dismiss family-responsibility discrimination claim where "there is nothing to support a causal inference" of such discrimination). Powell's management conflicts with Ellis, which included day-to-day disputes about scheduling, personnel decisions, and attempts to solicit information from Powell's staff, are the kind of "ordinary tribulations of the workplace" that regularly arise in business organizations. *Id.* Such behavior is not sufficiently severe to amount to legally cognizable harassment as a matter of law. *See Singleton v. Potter*, 402 F. Supp.2d 12, 43 (D.D.C. 2005) (allegations of "workplace scrutiny and infrequent, somewhat offensive generalizations are simply too mild and too common in many workplaces to constitute" harassment); *Singh v. U.S. House of Representatives*, 300 F. Supp.2d 48, 54-57 (D.D.C. 2004) (finding no hostile environment where plaintiff was "humiliated" at meetings, "screamed at" once, told to "shut up and sit down," and subject to "constantly hostile and hypercritical" management).

Powell also relies on Phoenix's comments about his use of "hotep," which Powell interpreted as an "accus[sation]" of his "fealty to a non-existent Black terrorist group." Am. Compl. ¶ 32. But the facts in the complaint do not support Powell's characterization. By Powell's own account, Phoenix made a single comment during a private dinner meeting, allegedly telling Powell "that a terrorist group was now using 'hotep' as a greeting and that Mr. Powell should discontinue using the term in his greetings because it reflected poorly on NIBS." *Id.* Phoenix also told Powell: "You can do what you want. No one is telling you how to communicate, but it would probably be better to stop using that word just to avoid any confusion." *Id.* Those statements do not support Powell's characterization that Phoenix accused him of "fealty" to terrorism. And even

11

assuming Phoenix had that intent, Powell does not allege he ever repeated those comments to Powell himself or to others at NIBS.  Generally, a single distasteful comment is insufficient to establish a hostile work environment.  *E.g.*, *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("Except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment.").

Taken as a whole, Powell's allegations do not rise to the level of severity required to sustain a claim for hostile work environment.  Accordingly, the Court will grant the defendant's motion to dismiss the hostile work environment claim in Count I.

### 2. Count II: Wage Theft under the D.C. Code

The D.C. Wage Payment and Wage Collection Law provides that whenever "an employer discharges an employee, the employer shall pay the employee's wages earned not later than the working day following such discharge."  D.C. Code § 32-1303(1).  If an employer fails to do so, it shall be liable for "liquidated damages" in the amount of "10 per centum of the unpaid wages for each working day during which such failure shall continue."  *Id.* § 32-1303(4).

Powell was terminated on August 14, 2023, and he alleges that NIBS "failed to pay his last paycheck on time" the following day.  Am. Compl. ¶ 27.  He demands (1) three months' severance pay that he was allegedly owed under his employment contract, and (2) liquidated damages for the untimely payment of his regular wages.  *Id.*  Powell does not contest, *see* Opp'n at 18–19, that "for cause" separation due to his failure to satisfy a condition of employment would negate NIBS's obligation to provide severance pay, *see* Mot. at 16; *Hendrix v. Napolitano*, 77 F. Supp.3d 188, 195 (D.D.C. 2015).  But he also alleges that NIBS was responsible for his failure to get a security clearance, Am. Compl. ¶¶ 10, 24, and that it discriminatorily enforced that condition, *id.* ¶ 7.  At least at the motion to dismiss stage, Powell can proceed on his wage theft claim for severance pay.

He also has sufficiently alleged that NIBS failed to pay his regular wages within one working day of his discharge, as required under D.C. Code § 32-1303(4). Accordingly, the Court will deny the defendant's motion to dismiss and permit Powell to proceed on Count II.

### 3. Count III: Defamation and Count VI: Invasion of Privacy / False Light

To state a claim for defamation, a plaintiff must allege "(1) that he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm." *Farah v. Esquire Magazine*, 736 F.3d 528, 533–34 (D.C. Cir. 2013). A defamatory statement must be "provably false" and "more than unpleasant or offensive"—it must "make the plaintiff appear odious, infamous or ridiculous." *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 583, 591 (D.C. 2000); *see Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984). Likewise, a claim for false light invasion of privacy "requires a showing of (1) publicity, (2) about a false statement, representation or imputation, (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person." *Blodgett v. Univ. Club*, 930 A.2d 210, 222 (D.C. 2007). Where a plaintiff relies on the same underlying conduct to assert claims for defamation and invasion of privacy, those claims may be analyzed in a "like manner." *Harrison v. Washington Post Co.*, 391 A.2d 781, 784 n.8 (D.C. 1978)

Powell fails to state a claim for defamation or invasion of privacy because he fails to identify a false, defamatory statement. Neither the July 28 and July 31 announcements about Powell's administrative leave, nor his removal from his position in an allegedly humiliating manner, are a sufficient basis for his claims. The July 28 and July 31 announcements were not "provably false." *Guilford Transp.*, 760 A.2d at 591. Ellis allegedly stated that Powell "knew he needed a Secret Level Security Clearance when he was hired, he did not get it, and he took a job

13

which he knew he was unqualified for." Am. Comp. ¶ 49. Powell does not dispute that he knew a Secret Level clearance was a condition of his employment, or that he took the CEO position without one. Opp'n at 19–20. He argues that Ellis's assertion that "he did not get it" was false because his final clearance "had not been denied" when her statement was made—the Agency's investigation was still ongoing as of July 31. But the then-pending investigation is beside the point. It is undisputed that at the time of Ellis's announcement—nearly a year after Powell began his job at CEO—Powell had not obtained a Secret Level clearance. Am. Comp. ¶ 49. Accordingly, there was nothing false about the Ellis's announcement that Powell knew he was required to and "did not get [the clearance]." *Id.* Ellis's assertion that "[Powell] took a job which he knew he was unqualified for," *id.*, is also not a "provably false" statement, *Guilford Transp.*, 760 A.2d at 591. Powell "concedes that he was required to obtain a security clearance in the course of his employment," and that he took the job "without a clearance." Opp'n at 15. Hence, Ellis's statement that Powell was "unqualified" accurately reflects that Powell took a job knowing he did not satisfy a known condition of employment. *See Sigal Const. Corp. v. Stanbury*, 586 A.2d 1204, 1210 (D.C. 1991) (an allegedly defamatory statement must be "viewed in [its] totality, not as [an] isolated phrase[] or word[]").

Powell's allegation of defamation by action also fails. He relies on *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, in which a plaintiff alleged she was terminated in a manner communicating a defamatory message. 715 A.2d 873, 877 (D.C. 1998). Wallace alleged that her immediate expulsion, which involved her keycard being deactivated locking her out of office, was a manner of termination her employer had previously used only when employees "had been caught stealing, engaging in insider trading, or engaging in child molestation." *Id.* The defamatory circumstances of the *Wallace* termination are markedly distinguishable from this case. Here, NIBS

provided an explicit rationale for Powell's placement on administrative leave—his failure to obtain a Secret Level clearance, *see* Am. Comp. ¶ 49—and his termination could not be reasonably construed as conveying that he had engaged in "odious" or criminal acts, *Guilford Transp.*, 760 A.2d at 591.

Accordingly, the Court will grant the defendant's motion to dismiss the defamation and invasion of privacy claims.

### 4.   Count IV: Breach of Contract

Powell fails to state a claim for breach of contract. The relevant portions of the complaint do not identify a valid cause of action or cite any relevant legal authority. *See* Am. Comp. ¶ 53–56. Powell alleges NIBS violated an "implied duty of good faith and fair dealing," "breached its commitments," and took "deliberate actions to thwart performance the contract," but he does not identify any specific commitment breached or contract term thwarted. *Id.* His "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough to survive motion to dismiss. *Iqbal*, 556 U.S. at 678. In his opposition brief, Powell argues he was fired in violation of a provision that "included a term of two years," Am. Compl. ¶ 27; *see* Opp'n at 22, but he does not allege that term was guaranteed rather than at-will, *see Aiello v. Novartis Pharms. Corp.*, 746 F. Supp. 2d 89, 99 (D.D.C. 2010) (absent a "clear expression of an intent to enter into a contract for a fixed period," employment contracts are presumed to be at-will). Accordingly, the Court will grant the defendant's motion to dismiss the breach of contract claim.

### 5.   Count V: Wrongful Termination

A discharged employee may state a claim for wrongful termination if "the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal

15

regulation." *Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 5 (D.D.C. 2002) (citing *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 34 (D.C. 1991)); *see Alibalogun v. First Coast Sec. Sols., Inc.*, 67 F. Supp. 3d 211, 217 (D.D.C. 2014) (the employee must be "terminated solely on the basis" of acting "in furtherance of a public policy"). The employee must identify "a clear mandate of public policy," *Riggs*, 203 F. Supp. 2d at 7, that is "officially declared" "in a statute or municipal regulation," *Adams*, 597 A.2d at 33–34. There must be a "close fit" between the policy as expressed in these sources and the allegedly wrongful termination. *Alibalogun*, 67 F. Supp. 3d at 217.

Powell fails to state a wrongful termination claim because he fails to identify any public policy serving as the basis for his termination. He alleges that he was discharged because of his "effort to comply with the law" by not sharing the contents of the "Eyes-Only Package" with NIBS executives. Am. Compl. ¶¶ 60–61. That argument is unavailing. To begin, Powell identifies no "statute or municipal regulation" that required him to keep the contents of the Eyes-Only Package from the NIBS Board. *Adams*, 597 A.2d at 33–34. He relies on the Federal Privacy Act, 5 U.S.C. § 552a(b), but that statute constrains a federal agency from disclosing records to individuals or other agencies, not an individual from disclosing confidential information about himself to his employer. Further, acting to protect "confidential personally identifiable information" serves Powell's *own* interests, not the public's. Am. Compl. ¶ 55; *see Alibalogun*, 67 F. Supp. 3d at 217 (examples "in furtherance of a public policy" include reporting wrongdoing in government contracting, refusing to participate in prohibited partisan political activity, or threatening to report improper storage of pharmaceuticals). Moreover, Powell did share the information in the package with NIBS legal counsel, undercutting his allegations that such disclosure was illegal. *See* Am.

Compl. ¶ 18.  Accordingly, the Court finds the Powell has not pleaded a claim of wrongful discharge, and it will grant the defendant's motion to dismiss.

    **B.**    **Motion for Summary Judgment**

In the alternative, NIBS seeks summary judgment under Rule 56.  Because both parties' summary judgment filings contain deficiencies, the Court will deny the motion without prejudice and grant the defendant leave to refile.  *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996) (the Court is entitled to "require strict compliance with the [summary judgment] local rule").  Local Civil Rule 7(h)(1) provides that motions for summary judgment "shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement."  The defendant's summary judgment motion relies on a number of purportedly indisputable facts, such as Ayers' Top Secret clearance, Powell's offer letter including a security clearance requirement, and Powell's employment contract being expressly "at-will."  *See* Mot. at 5, 9, 22.  But the motion does not include and is not accompanied by a "statement of material facts," in violation of the local rules and the Court's standard order.[3]  *See* Standard Order 4–5, Dkt. 7; LCvR 7(h)(1).  Likewise, Powell's motion in opposition contains significant deficiencies.[4]  And under Rule 56(d), to obtain further discovery, Powell must outline

---

[3] The Court's Standard Order provides that "each party submitting a motion for summary judgment **attach a statement of material facts for which that party contends there is no genuine dispute**, with specific citations to those portions of the record upon which the party relies in fashioning the statement."  Standard Order at 4–5 (emphasis in original); *see Jackson*, 101 F.3d at 151.  Although NIBS did file an addendum of material facts, Dkt. 24, after Powell pointed out the Rule 7(h)(1) deficiency in his opposition, NIBS's out-of-time statement was still in violation of the local rules and deprived Powell of full opportunity to contest the statement.

[4] Powell's Statement of Disputed Material Facts, *see* Dkt. 15, fails to "ennumerat[e] all material facts that the party contends are genuinely disputed," *see* Standard Order at 5.  Rather than

in detail the facts he intends to discover along with reasons why those facts (1) "are necessary to the litigation," (2) could not be produced in opposition to the other party's summary judgment motion, and (3) are "in fact discoverable." *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020) (quoting *Convertino*, 684 F.3d at 99–100).  Accordingly, the Court will deny the summary judgment motion without prejudice and grant the defendant leave to refile the motion, accompanied by a statement of material facts and the supporting record. If Powell seeks discovery before the Court rules on the motion for summary judgment, he will need to file a motion that satisfies the requirements of Rule 56(d).

## CONCLUSION

For the above stated reasons, the defendant's Motion to Dismiss is granted in part and denied in part.  Counts III, IV, V, and VI of the plaintiff's complaint are dismissed without prejudice.  The plaintiff may proceed on his disparate treatment claim alone on Count I, and he may also proceed on Count II.  The defendant's Motion for Summary Judgment is denied without prejudice.  A separate order consistent with this decision will accompany this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

September 29, 2024

---

highlighting the facts in genuine dispute, Powell merely repeats, nearly verbatim, all of the factual allegations contained within the amended complaint.