**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMIR CLAYTON POWELL, | |
| *Plaintiff,* | |
| v. | No. 23-cv-3336 (DLF) |
| NATIONAL INSTITUTE OF BUILDING SCIENCES, | |
| *Defendant.* | |

## <u>MEMORANDUM OPINION</u>

Amir Clayton Powell brings this action against the National Institute of Building Sciences (NIBS), his former employer. His two remaining counts assert claims under the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*, and the District of Columbia Wage Payment Collection Law, D.C. Code § 32-1302 *et seq.* Powell alleges that NIBS engaged in race-based discrimination and failed to pay him certain wages and severance after terminating him. Before the Court is NIBS's Renewed Motion for Summary Judgment. Def's Mot., Dkt. 32. For the reasons that follow, the Court will grant the motion.

## I.  BACKGROUND

NIBS is a nonprofit organization that supports advances in building construction for housing, commerce, and industry. Am. Compl. ¶ 6, Dkt. 17-1; *see* Am. Answer ¶ 6, Dkt. 29. Powell, an African American male, accepted the position of President and CEO of NIBS on August 7, 2022, and began employment on September 12, 2022. Am. Compl. ¶¶ 5, 7; Am. Answer ¶¶ 5, 7. As stated in his offer letter, which Powell signed, his at-will employment was conditioned on obtaining a Secret Level security clearance. Def's Mot., Ex. 5, at 1, Dkt. 32-7 ("One key

requirement for the President and CEO position is having Secret level federal security clearance.");
*see also* Am. Compl. ¶ 8; Am. Answer ¶ 8.  He applied for an interim security clearance in December 2022 and received one in January 2023.  Am. Compl. ¶ 10; Am. Answer ¶ 10.  On July 20, 2023, Powell's interim clearance was withdrawn by the Defense Counterintelligence and Security Agency (DCSA).  Am. Compl. ¶ 18.  Powell received an "Eyes-Only Package" from DCSA that included a statement of the reasons why Powell's interim clearance was withdrawn. *Id.* ¶¶ 18–19.

Powell never received another interim clearance nor a final clearance from DCSA, and the NIBS Board of Directors voted to terminate him on August 10, 2023.  *Id.* ¶ 27; Am. Answer ¶ 27; Def.'s Statement of Facts (SOF) ¶ 11, Dkt. 32-1.  Powell was terminated on August 14, 2023. Def's SOF ¶ 12; *see* Pl.'s Opp'n 3, Dkt. 33.

The next day, August 15, 2023, Powell received a wire transfer in his bank account from NIBS representing the wages he was owed through the date of his termination, including compensation for unused vacation pay.  Def.'s SOF ¶¶ 13–14.  Powell's offer letter from NIBS provided that he would receive an additional severance payment "if [he was] involuntarily terminated by NIBS without good cause."  *Id.* ¶ 10.  Powell did not receive a severance payment from NIBS.  *See* Am. Compl. ¶ 27; Pl.'s Opp'n 7; Def's Mot., Ex. 2, Dkt. 32-4.

Powell's predecessor as interim President and CEO was Steven Ayers, a white male.  Def.'s SOF ¶¶ 1–2.  Ayers also replaced Powell as President and CEO after Powell was terminated.  Pl.'s Opp'n 3.

Powell filed suit against NIBS alleging employment discrimination.  Specifically, Powell asserted six counts: hostile work environment and disparate treatment under the D.C. Human Rights Act, D.C. Code § 2-1301 *et seq.*; wage theft under the D.C. Wage Payment and Wage

Collection Law, D.C. Code § 32-1303; defamation; breach of contract; wrongful termination; and invasion of privacy/false light.  *See* Am. Compl. ¶¶ 28–70.

NIBS moved to dismiss Powell's amended complaint or for summary judgment.  Def.'s Mot. to Dismiss, Dkt. 20.  The Court dismissed all but two of Powell's claims: disparate treatment under the D.C. Human Rights Act and wage theft under the D.C. Wage Payment and Wage Collection Law.  *See Powell v. Nat'l Inst. of Bldg. Scis.*, No. 23-cv-3336, 2024 WL 4346217, at *8 (D.D.C. Sept. 29, 2024).  The Court denied without prejudice NIBS's motion for summary judgment because NIBS did not provide a timely statement of material facts.  *Id.*  NIBS has filed a renewed motion for summary judgment on the two remaining counts.

## II.    LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986).  A "material" fact is one that could affect the outcome of the lawsuit.  *Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party.  *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  In reviewing the record, the Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

A party opposing summary judgment must "substantiate [its allegations] with evidence" that "a reasonable jury could credit in support of each essential element of [its] claims."  *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015).  "A party asserting that a fact cannot be

3

or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   ANALYSIS

### A.   Count I: Disparate Treatment Under the D.C. Human Rights Act

The D.C. Human Rights Act (DCHRA) provides that an employer may not "discharge" or "otherwise . . . discriminate against any individual, with respect to his or hers [sic] compensation, terms, conditions, or privileges of employment" on the basis of race.  D.C. Code § 2-1402.11(a)(1)(A).  The Court analyzes "discrimination claims under the D.C. Human Rights Act in the same way that [it] analyze[s] discrimination claims under the federal anti-discrimination laws."  *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011).

To prove disparate treatment, a plaintiff must show that he suffered an adverse employment action as a result of discrimination.  *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006).  In cases involving indirect evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  Under that framework, the employee "must first make out a prima facie case" of discrimination.  *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019).  The burden then shifts to the employer to "come forward with a legitimate reason for the challenged action."  *Id.*  If the employer does, the district court "need not—*and should not*—decide whether the

4

plaintiff actually made out a prima facie case." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

Here, the Court need not consider whether Powell has established a prima facie case of discrimination because NIBS has asserted a non-discriminatory reason for his termination. When a defendant has provided a legitimate reason for terminating an employee, the burden shifts to the employee to show that the reason was pretextual. *See Iyoha*, 927 F.3d at 566. Thus, the Court will instead evaluate whether Powell has "produced sufficient evidence for a reasonable jury to find that [NIBS's] asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race." *Brady*, 520 F.3d at 494. A court "may not second-guess an employer's personnel decision absent demonstrably discriminatory [or retaliatory] motive." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citation modified).

Powell fails to produce sufficient evidence showing that NIBS's non-discriminatory reason was not the actual reason for his termination and that NIBS instead discriminated against him based on his race. NIBS gives a non-discriminatory reason for Powell's termination: Powell's offer letter required him to hold a security clearance, and he was terminated because he failed to secure one. *See* Def.'s SOF ¶ 11; Def's Mot., Ex. 5, at 1. Powell does not dispute that he lacked a security clearance, but he argues that NIBS's reason is pretext for racial discrimination. Pl.'s Opp'n 4, 6–7. His argument largely rests on his allegation that Ayers, his white male predecessor, "did not have a Secret Level Security Clearance" but nonetheless served as NIBS President and CEO without being terminated. *See* Am. Compl. ¶ 32.

NIBS proffers two affidavits refuting that allegation. First, NIBS offers an affidavit from Ayers attesting that he held a Top Secret clearance at all times during his employment at NIBS.

Def.'s Mot., Ex. 4, ¶ 4, Dkt. 32-6.  Next, NIBS presents an affidavit from a specialist at DCSA who attests that Ayers "has held Told Secret clearance continuously from at least 2005 to the present" and that his clearance "has never been revoked or modified" over this period.  Def.'s Mot., Ex. 6, ¶¶ 4, 5, 7, Dkt. 32-8.

In his opposition, Powell provides no evidence to contradict these affidavits, arguing instead—and for the first time—that even if Ayers held a valid security clearance, his clearance was not properly affiliated with NIBS.[1]  Pl.'s Opp'n 6.  In reply, NIBS provides updated affidavits from both Ayers and the DCSA specialist confirming that Ayers's Top Secret Security Clearance was properly affiliated with NIBS between December 2021 and September 2022, when Ayers served as interim President and CEO.[2]  Def.'s Reply, Ex. 8, ¶ 7, Dkt. 36-1; *id.*, Ex. 9, ¶¶ 1, 5, Dkt. 36-2.

Powell's alternative argument also fails.  He alleges that he could have simply been "walled off from work that required a security clearance."  Am. Compl. ¶ 32.  But Powell does not provide any evidence of a similarly situated individual, not in his protected class, who received this

---

[1] NIBS contends that Powell's affiliation argument is a new claim improperly made in an opposition to a motion for summary judgment.  Def.'s Reply 3 n.1, Dkt. 36.  The Court agrees that Powell's argument may well be an impermissible new claim.  *See Bean v. Perdue*, 316 F.Supp.3d 220, 226 (D.D.C. 2018) ("[I]t is well established that a party may not amend its complaint or broaden its claims through summary judgment briefing." (quoting *District of Columbia v. Barrie*, 741 F. Supp.2d 250, 263–64 (D.D.C. 2010))).  However, the Court need not decide that it is. Powell provides no facts supporting his theory, *see* Pl.'s Opp'n 6, and the affidavits that NIBS attaches to its reply fully rebut Powell's unsupported assertion and demonstrate that there is no genuine dispute of fact, *see* Def.'s Reply, Ex. 8, ¶¶ 6–7, Dkt. 36-1; *id.*, Ex. 9, ¶¶ 1, 5, Dkt. 36-2.

[2] Powell also appears to suggest for the first time in his opposition that Ayers, as his *successor*, did not have a clearance properly affiliated with NIBS.  *See* Pl.'s Opp'n 6.  But NIBS's affidavits from Ayers and the DCSA specialist confirm that Ayers held an affiliated clearance starting in September 2023 after Ayers rejoined NIBS as President and CEO following Powell's termination. Def.'s Reply, Ex. 8, ¶ 8; *id.*, Ex. 9, ¶¶ 1, 5.  Powell's affidavit does not contradict this fact, and the affiant's personal opinion interpreting an ambiguous email she received does not create a triable issue of fact given the Ayers and DCSA affidavits.  Pl.'s Opp'n, Ex. A, ¶ 5, Dkt. 33-1.

accommodation, *see* Pl.'s Opp'n 5–6, and he also fails to revive this argument in response to NIBS's motion, thereby conceding it, *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014).

Because Powell offers "no admissible evidence contradicting" NIBS's admissible evidence, *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Bristol Manor*, 153 F. Supp. 3d 363, 375 (D.D.C. 2016), he has failed to create a genuine dispute of material fact as to NIBS's reason for terminating him.  Accordingly, NIBS is entitled to summary judgment on Powell's disparate treatment claim.

> **B.     Count II: Wage Theft Under the D.C. Wage Payment and Wage Collection Law**

The D.C. Wage Payment and Wage Collection Law (DCWPWCL) provides that whenever "an employer discharges an employee, the employer shall pay the employee's wages earned not later than the working day following such discharge."  D.C. Code § 32-1303(1).  If an employer fails to do so, the employer shall be liable for "liquidated damages" in the amount of "10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to treble the unpaid wages, whichever is smaller."  *Id.* § 32-1303(4).

NIBS terminated Powell on August 14, 2023.  He alleges that NIBS "failed to pay his last paycheck on time" and seeks statutory damages.  Am. Compl. ¶ 27; *see id.* ¶¶ 39, 43.  Even though it is not clear from his complaint, he also alleges that NIBS failed to pay him a severance payment that he was allegedly owed.  *See id.* ¶ 27; Pl.'s Opp'n 7.

Starting with his regular wages, Powell fails to produce any evidence to create a genuine dispute of material fact as to the date on which he received them.  NIBS submits that "[o]n August 15, 2023, [Powell] received a wire transfer into his bank account from NIBS representing all the

wages he was owed through the date of his termination, in addition to compensation for unused vacation pay."  Def's SOF ¶ 13.  NIBS provides "true and authentic" copies of payroll journal entries and a federal wire transfer confirmation "kept in the ordinary course of business" that demonstrate Powell received his regular wages and vacation payments on August 15, 2023, one day after his termination.  Def.'s Mot., Ex. 4, ¶ 6; *see id.*, Ex. 2, at 1; *id.*, Ex. 3, at 1, Dkt. 32-5.  Faced with that evidence, Powell does not dispute this fact, *see* Pl.'s Opp'n 4, offers no evidence to the contrary, *id.* at 6–7, and concedes the argument by abandoning it in his opposition, *see Wannall*, 775 F.3d at 428.  Because there is no genuine dispute that NIBS paid Powell his regular wages on August 15, 2023, in compliance with the DCWPWCL, the Court will enter judgment in favor of NIBS with respect to his wages claim.

Powell also fails to show a genuine factual dispute with respect to his severance payment.  Powell's offer letter provided for three months' severance only if he was terminated without cause.  *See* Def.'s Mot., Ex. 5, at 2.  As mentioned, the letter required Powell to obtain and maintain a security clearance.  *Id.* at 1; Am. Compl. ¶ 8.  Powell has not contested that "'for cause' separation due to his failure to satisfy a condition of employment would negate NIBS's obligation to provide severance pay."  *Powell*, 2024 WL 4346217, at *6.  And indeed, an employee's inability to obtain a required security clearance can be valid cause for termination.  *See Hendrix v. Napolitano*, 77 F. Supp. 3d 188, 195 (D.D.C. 2015) (quoting *Keyes v. District of Columbia*, 372 F.3d 434, 439 (D.C. Cir. 2004)) (explaining that an employee's failure to maintain a Top Secret clearance compelled the employee to resign or be removed "for cause").

Powell instead "alleges that NIBS was responsible for his failure to get a security clearance, Am. Compl. ¶¶ 10, 24, and that it discriminatorily enforced [this employment] condition, *id.* ¶ 7."  *Powell*, 2024 WL 4346217, at *6.  But even if Powell's allegations were legally relevant to

determining whether his termination was for cause, the record shows that they are factually inaccurate.

First, Powell argues that NIBS obstructed his ability to obtain a security clearance by failing to respond to an inquiry from DCSA.  Am Compl. ¶¶ 10, 24.  In response, NIBS provides an affidavit from the Field Office Chief for DCSA's Industrial Security mission, who certifies that the DCSA facility security clearance history for NIBS "does not reflect any inquiry" during the relevant time period directed to NIBS regarding Powell's clearance "to which [NIBS] failed to respond."  Def.'s Mot., Ex. 1, ¶ 4.  Powell provides no evidence to dispute NIBS's affidavit.  *See* Pl.'s Opp'n 6–7.  Moreover, Powell concedes the argument by failing to raise the issue in his opposition to NIBS's renewed motion.  *See id.*; *Wannall*, 775 F.3d at 428.

Second, recycling his allegations from Count I, Powell contends that his failure to obtain a security clearance cannot be cause for termination because his successor, Ayers, did not have a clearance with NIBS when he became CEO following Powell's termination.  Pl.'s Opp'n 7.  As the Court has already found, however, Powell's argument contradicts the facts in the record.  The NIBS affidavits demonstrate that Ayers held a valid security clearance affiliated with NIBS during his employment with NIBS.  Powell's affidavit, in which NIBS's Chief Human Resources Officer attests that she "understood [an email stating that Ayers's 'security clearance should be initiated immediately'] to mean that Stephen Ayers did not currently hold an active security clearance through any existing employer," Pl.'s Opp'n, Ex. A, ¶ 5, Dkt. 33-1, is insufficient to create a genuine dispute of fact.  The affiant does not have personal knowledge about Ayers's security clearance, and her opinion, based on an ambiguous email she received from a colleague, does not create a triable issue of fact.  Unrebutted affidavits from Ayers, the holder of the clearance, and

DCSA, the issuing entity of the clearance, clearly establish that Ayers had a valid security clearance affiliated with NIBS during his employment with NIBS.

Powell raises one final argument for the first time in his opposition brief. In a declaration, the Chief Human Resources Officer of NIBS attests that the Acting CEO of NIBS told her, the day after Powell's termination when his final wage payment was being calculated, that "they are trying to find cause" for Powell's termination and would accordingly not pay him severance. Pl.'s Opp'n, Ex. A, ¶ 3. Powell contends that this statement demonstrates that "at the time of [his] termination, NIBS did not have cause to terminate him." Pl.'s Opp'n 2; *see id.* at 7. Even if the Court assumes that this statement is admissible, which Powell makes no attempt to show,[3] it does not support his claim. On its own, the ambiguous statement "trying to find cause" does not establish that NIBS either lacked cause or was fabricating cause for Powell's termination. To the contrary, the undisputed record establishes that obtaining a security clearance was a condition of Powell's employment as President and CEO and that nearly a year after starting the job, he still lacked one.

---

[3] As NIBS observes, *see* Def.'s Reply 8 & n.8, the statement appears to be double hearsay: an unidentified third party ("they") purportedly made a statement to the Acting CEO who purportedly relayed that statement to the declarant. Powell fails to acknowledge the hearsay issue, nor does he provide any argument or authority for why the statement would be admissible at trial. *See Am. President Lines, LLC v. Matson, Inc.*, 775 F. Supp. 3d 379, 404 (D.D.C. 2025) (hearsay proponent must make an argument for why statement is admissible in his summary judgment brief), *dismissed*, No. 25-7051, 2025 WL 1649080 (D.C. Cir. June 6, 2025); *Jones v. Off. of Architect of Capitol*, No. 21-cv-0990, 2025 WL 858267, at *11 (D.D.C. Mar. 19, 2025) ("Because [hearsay proponent] has not identified any relevant exception, he 'would not be permitted to testify about the [statement] at trial,' and his deposition testimony about it 'counts for nothing' in the summary judgment analysis." (quoting *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000))). Moreover, the declaration does not reveal who "they" refers to in the statement, nor does it demonstrate that the Acting CEO had any authority to speak on behalf of the NIBS Board of Directors, which had made the decision to fire Powell, the outgoing CEO. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Gleklen*, 199 F.3d at 1369. Based on this record, the Court cannot conclude that the statement would be admissible at trial.

Moreover, there is nothing inappropriate about an employer assessing whether an at-will employee's termination met contractual "for cause" standards to determine whether a severance payment must be made.

Because Powell does not provide sufficient evidence to demonstrate a genuine dispute of material fact about whether he should have been paid severance, the Court will enter judgment in favor of NIBS with respect to his severance claim.

### C.    Powell's Rule 56(d) Request for Discovery

In his opposition to NIBS's motion, Powell requests additional discovery pursuant to Federal Rule of Civil Procedure 56(d).  *See* Pl.'s Opp'n 2; *id.*, Ex. B, ¶¶ 4–5, Dkt. 32-2.  Through an affidavit by his attorney, David Branch, he seeks to conduct depositions of Ayers and others at NIBS and DCSA.  Pl.'s Opp'n, Ex. B, ¶ 5.  These depositions would focus on "when [Ayers] obtained a security clearance to work on NIBS systems and facilities" and elaborate certain statements made by or told to NIBS employees.  *Id.*

A non-moving party that invokes Rule 56(d) "bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party [could not] produce those facts in opposition to the motion."  *Scott-Blanton v. Universal City Studios Prods.*, 246 F.R.D. 344, 347 (D.D.C. 2007) (citing *Byrd v. EPA*, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999)).  Powell must also show "a reasonable basis to suggest that discovery would reveal triable issues of fact."  *Bancoult v. McNamara*, 217 F.R.D. 280, 283 (D.D.C. 2003) (citing *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999)).  "It is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact."  *Byrd*, 174 F.3d at 248 n.8 (citation modified).  "Whether the circumstances warrant a continuance to permit discovery is a

decision that falls within the discretion of the district court." *Scott-Blanton*, 246 F.R.D. at 346 (citing *Stella v. Mineta*, 284 F.3d 135, 147 (D.C. Cir. 2002)).

Powell's Rule 56(d) affidavit fails to satisfy the *Byrd* requirements.  For one, Powell fails to explain why he could not produce the desired facts before filing his opposition.  *See* Pl.'s Opp'n, Ex. B, at 1–2.  For another, he fails to identify any specific information that the several requested depositions would generate that could create a triable issue of fact.  Many of the facts Powell seeks to gain from the depositions—for example, "when Stephen T. Ayers actually became cleared to access classified materials" and "when [Ayers] obtained a security clearance to work on NIBS systems and facilities"—are already in the record.  Pl.'s Opp'n, Ex. B, ¶ 5; *see, e.g.*, Def.'s Mot., Ex. 4; *id.*, Ex. 6.

Much like the meager record evidence Powell offers in support of his alleged claims, his grounds for Rule 56(d) discovery fall considerably short.  Granting his unsubstantiated request would most certainly impose unnecessary costs on NIBS and further burden judicial resources.  Because Powell has failed to demonstrate that additional discovery is warranted under Rule 56(d), the Court will deny his request to prolong this case.

**CONCLUSION**

For the foregoing reasons, the Court will grant the defendant's Renewed Motion for Summary Judgment, Dkt. 32. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 30, 2026